**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 10-612** |
| **LARRY BUTLER** | : | |

## MEMORANDUM

**Schiller, J.**                                                                    **September 8, 2020**

Before the Court is the Defendant Larry Butler's Motion for Compassionate Release. For the reasons that follow, the motion is granted.

## I.    FACTUAL BACKGROUND

### A.  Butler's Crime and Sentence

Larry Butler is currently incarcerated for the robbery of a clothing store on May 20, 2010, during which he threatened store employees with a firearm and bound them with zip ties. Butler was detained pending trial in September 2010. He was convicted and sentenced on charges of Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, and brandishing a firearm in the commission of that offense, in violation of 18 U.S.C. § 924(c). This Court sentenced Butler to a 175-month term of imprisonment to be followed by five years of supervised release. Butler currently has served approximately 133 months, including good conduct time of 13 months, or approximately 75% of his sentence. (Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Gov't's Resp.] at 4.) His anticipated release from prison is May 30, 2023, with an additional five years of supervised release to follow. (*Id.*)

1

### B.  The Pandemic

The Court will not write at length about the havoc wreaked by COVID-19 in the United States. The virus, coupled with the abysmal response to it throughout much of this country, has led to the death of over 186,000 people (and counting) in the United States. While the virus can be dangerous for anyone, people with certain underlying medical conditions and older adults are at increased risk of severe illness or death from COVID-19. *People Who Are At Increased Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 4, 2020). Prisons have been hit particularly hard by the pandemic, as they present numerous environmental factors favorable to the spread of the virus. *See United States v. Rodriguez*, Crim. A. No. 03-271, 2020 WL 1627331, at *1, 8-9 (E.D. Pa. Apr. 1, 2020) ("Prisons are tinderboxes for infectious disease.").

### C.  Butler's Motion for Compassionate Release

After the onset of the unprecedented pandemic, in April 2020, Butler petitioned the warden of FCI Schuylkill—the facility where he is housed—for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), based on extraordinary and compelling reasons because he suffers from health conditions associated with an increased risk of serious infection or death from COVID-19. (Gov't's Resp. at 4.) The warden denied that request six days later. (*Id.*) In July 2020, Butler moved this Court *pro se* on the same grounds, and the Government has opposed the motion. Butler is 61 years old, and he suffers from obesity, hypertension, sleep apnea, and anxiety, among other conditions. (*See id.* at 4-5; E.C.F. No. 65 at 36.)

## II.    DISCUSSION

Butler seeks to reduce his sentence and grant compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). Before the Court may consider such a motion, the defendant must satisfy an

administrative exhaustion requirement to the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). If the requirement is satisfied, a district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(ii). Finally, prior to granting a compassionate release, a district court must "consider[ ] the factors set forth in section 3553(a)", which are the factors to be considered in imposing a criminal sentence, "to the extent they are applicable[.]" *Id.* § 3582(c)(1)(A). Those factors include: the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, provide adequate deterrence, protect the public from further crimes, and provide the defendant with needed correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2, 6). In consideration of Butler's health conditions and age, as well as the length of time he has already served, and the factors in set forth in section 3553(a), the Court now finds that extraordinary and compelling reasons justify Butler's immediate release from imprisonment.

## A.     Exhaustion of Administrative Remedies

To fulfill § 3582(C)(1)(A)'s exhaustion requirement, an inmate must first request that the Bureau of Prisons (BOP) bring a motion for compassionate release on his behalf and either exhaust his administrative rights to appeal the BOP's denial or wait 30 days, whichever is earlier. *United States v. Harris*, 812 Fed. App'x. 106, 107 (3d Cir. 2020) (*citing United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020)). Butler submitted a request for compassionate release to the warden at his

current facility in April 2020. (Gov't's Resp. at 4.) He then filed the current motion in July 2020, more than 30 days later. Butler has met the requirement to exhaust his administrative remedies.

### B.      Extraordinary and Compelling Reasons

The Court finds that extraordinary and compelling reasons justify Butler's immediate release from incarceration. While Congress has not defined the term "extraordinary and compelling reasons," the Sentencing Commission's policy statement provides persuasive guidance on its meaning.[1] Pursuant to that statement, extraordinary and compelling reasons for sentence reduction exist where, "[t]he defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" U.S.S.G. § 1B1.13(1)(A)(ii). The Government concedes that "an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents a 'a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility[.]'" (Gov't's Resp. at 14, citing Sentencing Guidelines policy statement § 1B1.13(1)(A)(ii).) Thus, the first question the Court considers is whether Butler has a health condition identified by the CDC as increasing the risk of an adverse outcome from COVID-19. The Court finds that he does.

Butler's obesity alone puts him at risk of serious illness should he contract COVID-19. Current CDC guidance presents obesity, defined as a body mass index (BMI) of 30 or higher, as

---

[1] The Government argues that "the relevant policy statement of the Commission is binding on the Court[,]" in determining whether extraordinary and compelling reasons warrant a sentencing reduction. (Gov't's Resp. at 10.) This Court rejects the Government's position and, instead, subscribes to the thorough analysis of this issue outlined by Judge Anita Brody in *United States v. Rodriguez*, 2020 WL 1627331, at *4-6. While the Commission's outdated policy statement offers helpful guidance for this Court's determination, this Court retains the discretion to independently assess whether a defendant has presented "extraordinary and compelling reasons" beyond those contained in an outdated policy statement. Here, because the Government agrees that Butler's medical condition of obesity constitutes extraordinary and compelling reasons under the policy statement (*see* Gov't's Resp. at 14 n.4), whether or not the Court is bound by the policy statement is not determinative of the Court's decision.

an underlying medical condition that creates an increased risk for severe illness from COVID-19 for a person of any age. *Certain Medical Conditions and Risk for Severe COVID-19 Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 4, 2020). Indeed, the Government concedes that Butler's BMI of 35.8 "unquestionably meets the test for an 'extraordinary and compelling reason' set forth in application note 1(A), as the condition puts him at risk for a severe outcome were he to contract COVID-19." (Gov't's Resp. at 17.) In light of the Government's agreement that obesity constitutes a serious physical or medical condition, as described in policy statement note 1(A), the Court concludes that the COVID-19 pandemic modifies both the conditions that may make a defendant unable to provide self-care in a correctional facility, and the timeframe during which a defendant cannot be expected to recover. U.S.S.G. § 1B1.13(1)(A)(ii). Even if it were expected that Butler could recover from his diagnosis of obesity at some point in the future, he could not possibly recover quickly enough to protect himself from the immediate threat of COVID-19 in his prison facility and the severe or fatal consequences that he could suffer because of his obesity if he contracts the virus.

In addition to obesity, Butler also suffers from hypertension and sleep apnea, which manifests as shortness of breath while sleeping. (*See* E.C.F. No. 65 at 36, 82.) "Courts have granted compassionate release to incarcerated individuals with obesity and sleep apnea because those conditions place them at high risk for serious complications due to COVID-19." *United States v. Delgado*, Crim. A. 18-17, 2020 WL 2464685, at *4 (D. Conn. Apr. 30, 2020) (citing cases). The Government does not specifically address Butler's sleep apnea but argues that his "unspecified 'breathing issues'" do not present a definite risk factor for COVID. (Gov't's Resp. at 15.) As for hypertension, the Government argues that the CDC describes hypertension as a medical

condition that "might" be an independent risk factor for severe illness from COVID-19 but does not classify it as a definite risk factor. (*Id.*) But the CDC has also found that risk for hospitalization from COVID-19 is three times higher for those with hypertension than those without. *COVID-19 Associated Hospitalization Related to Underlying Medical Conditions*, CDC, https://www.cdc.gov /coronavirus/2019-ncov/covid-data/investigations-discovery/ hospitalization-underlying-medical-conditions.html (last visited Sept 4, 2020). The same is true for those with obesity. *Id.* The Court agrees with the Government that neither hypertension nor sleep apnea independently constitute CDC-identified risk factors for severe illness with COVID-19. But the Court considers these conditions as additional evidence that Butler's obesity—which is a CDC-identified risk factor for severe illness—creates a risk of serious health complications for him due to COVID-19. Butler is also nearly 62 years old, and older adults are generally at much higher risk for severe illness from COVID-19. Taken together, these numerous heightened risk factors put Butler at risk of severe illness or death if he were to contract COVID-19 and impede his ability to provide self-care in prison during the COVID-19 pandemic.

Even though Butler's medical conditions put him at risk of severe illness from COVID-19, the Government still contends that compassionate release is not appropriate because Butler's "medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and would also act to treat any inmate who does contract COVID-19." (Gov't's Resp. at 18.) According to the Government, the Bureau of Prisons (BOP) has reported one confirmed case of COVID-19 in the inmate population at FCI Schuylkill, but the inmate was isolated while treated and has recovered. (Gov't's Resp. at 9-10.) While this is far fewer reported COVID-19 cases than in some other facilities, the confirmed presence of COVID-19 at FCI Schuylkill, despite the BOP's procedures to prevent transmission

(*see* Gov't's Resp. at 6-9), underscores the ongoing risk to inmates of contracting the virus. And while the Government contends that the BOP would treat any inmate who contracts COVID-19, it bears remembering that "[t]here currently are no cures, vaccines, or accepted treatments for COVID-19, and the only effective way to protect vulnerable people from injury or death from COVID-19 is to prevent individuals from being infected with the COVID-19 virus." *Pimentel-Estrada v. Barr*, Civ. A. No. 20-495, 2020 WL 2092430, at *3 (W.D. Wash. Apr. 28, 2020). The Court is also sympathetic to the fact that Butler has diagnosed anxiety, which is undoubtedly made worse from the threat of COVID-19 in prison, especially for a person who suffers from comorbidities that make him particularly vulnerable to this illness. When considered together, Butler's obesity, hypertension, sleep apnea, and age, in light of the ongoing pandemic, constitute extraordinary and compelling reasons that justify his immediate release from incarceration.

### C.       Consistency with Sentencing Considerations

Finally, the Court finds that, upon weighing the extraordinary and compelling reasons for Butler's reduction of sentence against the sentencing considerations set forth in Section 3553(a), Butler is entitled to compassionate release. The relevant factors the Court must consider include the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, provide adequate deterrence, protect the public from further crimes, and provide the defendant with needed correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-2,6).

The Court considers these factors with great concern, as Butler is incarcerated for a serious and violent offense. As the Government points out, Butler also has a significant criminal history,

including two convictions for possession with intent to distribute and three previous convictions for robberies with assaults, including two aggravated assaults. (Gov't's Resp. at 2.) It is clear that Defendant's history presents a risk of recidivism. However, the Court notes that all of Butler's previous violent offenses—except the instant offense—occurred forty years ago, when Mr. Butler was 21 or 22 years old. He was not convicted of any violent crimes in the intervening nearly 30 years between those offenses and the present offense in 2010.

More importantly, Butler has already spent ten years in prison for the current offense. He has served 133 months after accounting for good conduct time, which is 75% of his original sentence. The Court may consider the amount of time left on a defendant's sentence in deciding a motion for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020). This is so because the length of time the defendant has already served is highly relevant to whether a reduced sentence will still sufficiently reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id.*; 18 U.S.C. § 3553(a)(2,6). When a defendant is soon to be released from prison, the efficacy of the court's ability to protect the public from further crimes of the defendant by denying compassionate release is lessened. *See United States v. Early*, Crim. A. No. 09-282, 2020 WL 2112371, at *4 (N.D. Ill. May 4, 2020).

Butler has already spent ten years in prison for his crimes of robbery and brandishing a firearm in violation of the Armed Career Criminal Act, and he currently has two years and nine months remaining until his release. But Butler's health conditions now put him at great risk of serious illness or death if he were to contract COVID-19, the likelihood of which will greatly increase if he is forced to spend the next two years incarcerated. Under such circumstances, the

Court finds that a reduction of Butler's sentence to the time he has already served, in combination with the extension of his supervised release conditioned upon home confinement, sufficiently reflects the seriousness of his crime and the need to provide just punishment, respect for the law, and adequate deterrence. *See United States v. Davidson*, Crim. A. No. 16-139, 2020 WL 4877255, *21-22 (W.D. Pa. Aug. 20, 2020); *Early*, 2020 WL 2112371, at *5; *Rodriguez*, 2020 WL 1627331, at *12. Moreover, Butler will inevitably be released in less than three years, and he has already shown rehabilitation over the course of his time in prison—as evidenced by his accrual of good conduct time. These facts weigh against the value of keeping Butler incarcerated to protect the public from further crimes. In light of the fact that Butler has already served ten years in prison and 75% of his sentence, Butler's immediate release, "makes a marginal difference to his punishment. But the difference to his health could be profound." 2020 WL 1627331, at *10.

Butler contends that he has adequate housing to return to upon release and could complete a period of home confinement. Therefore, the Court has determined that Butler should be permitted to return home to begin a period of extended supervised release of 66 months, the first six months of which will be restricted to home confinement. Upon Butler's completion of a six-month term of supervised release conditioned upon home confinement, Butler will then complete the original sixty-month term of supervised release that was imposed as part of his original sentence.

III.    **CONCLUSION**

For the foregoing reasons, Larry Butler's *pro se* Motion to Reduce Sentence for Extraordinary and Compelling Reasons under 18 U.S.C. § 3582(c)(1)(A)(i) is granted. An Order consistent with this Memorandum will be docketed separately.